## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 30 2015, 11:03 am

CLERK
of the supreme court,
court of appeals and
tax court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Cory C. Carter | Gregory F. Zoeller |
| Michigan City, Indiana | Attorney General of Indiana |
| | |
| | Jodi Kathryn Stein |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cory C. Carter, | June 30, 2015 |
| *Appellant-Defendant,* | Court of Appeals Cause No. 45A03-1411-PC-412 |
| v. | Appeal from the Lake Superior Court |
| State of Indiana, | The Honorable Clarence Murray, Judge |
| *Appellee-Plaintiff* | Cause No. 45G02-1111-PC-9 |

**Najam, Judge.**

## Statement of the Case

Cory C. Carter appeals the post-conviction court's denial of his petition for post-conviction relief. Carter raises two issues for our review:

1.     Whether the post-conviction court abused its discretion when it denied Carter's motions to withdraw his petition without prejudice.

2.     Whether the post-conviction court denied Carter a full and fair evidentiary hearing.

We affirm.

## Facts and Procedural History

The facts underlying Carter's convictions were stated by this court in his direct appeal:

> In September 1997 in Gary, Indiana, Carter and Vernon Bateman approached Kevin Taylor about whether Kevin had hit Bateman's girlfriend. Later that same day, Kevin and his older brother Frank Taylor were involved in an altercation with Carter, Bateman, and another person. Kevin fired multiple shots, two of which struck Carter's legs. That night, Kevin and Frank left for Milwaukee, Wisconsin. Kevin was charged with attempted murder and aggravated battery, but no arrest was made because the Gary Police Department could not locate him.
>
> About two weeks later, Kevin and Frank returned to Gary because Kevin wanted to turn himself in. They did not go directly to the police station but instead visited Lorenzo Lee at his home. Lee's girlfriend and children were also in the home. At some point during the visit, Carter entered Lee's home, cocked a shotgun, pointed it at Kevin and Frank, and ordered them outside. Kevin and Frank, both unarmed, complied, and Kevin began talking to Carter. Carter shot Kevin, from a distance of three to four feet, and Kevin fell to the ground. Carter then fired at Frank. The bullet struck Frank's right forearm, and Frank ran through the home and climbed out a

window. After a few minutes, Frank returned to the front of the home where Kevin was lying on the ground. Carter had fled.

Frank identified Carter as the shooter when Officer Billy Shelton of the Gary Police Department spoke with him at the scene. While at the hospital, Frank again identified Carter as the shooter to Officer Shelton and separately to Officer Bruce Outlaw. When Officer Outlaw showed Frank a photo array, Frank identified the photo of Carter. Officer Outlaw later testified that the severity of Frank's gunshot wound prevented him from signing his selection on the photo array: "[I]t appeared that the flesh may have got off the bone of his arm. I think the shotgun blast took the flesh off of his arm, it was pretty much hanging off." Officer Outlaw made a handwritten note that Frank had identified photo number four.

Frank learned at the hospital that his brother Kevin died from the gunshot wound. When Frank was released from the hospital, he went to Milwaukee. Carter was arrested in October 1997. However, because Frank's identification of Carter was not in a formal written statement authenticated by Frank's signature and because Officer Outlaw was unable to locate Frank after he left the hospital, no charges were filed against Carter.

Ten years later, in 2007, Saron Foley, who was serving a sentence for a 1998 rape conviction, contacted prison officials about Kevin's murder. Officer James Gonzales took a signed statement from Foley, who identified Carter as the person who shot Kevin and Frank. When shown a photo lineup, Foley identified the photo of Carter. Officer Gonzales then located Frank in Milwaukee, who again identified Carter as the shooter. When shown a photo lineup, Frank identified the photo of Carter.

The State charged Carter with murder and Class A felony attempted murder. . . .

*Carter v. State*, No. 45A05-0905-CR-258 (Ind. Ct. App. Mar. 10, 2010) (footnotes and citations omitted), *trans. denied*.

[4] On February 27, 2009, a jury found Carter guilty as charged. The trial court sentenced Carter to an aggregate term of sixty years. We affirmed Carter's convictions and sentence on direct appeal.

[5] On November 29, 2011, Carter filed his petition for post-conviction relief, in which Carter alleged he had received ineffective assistance from his trial and appellate counsel. In particular, Carter alleged that his trial counsel rendered ineffective assistance when he: (1) failed to move to dismiss the charges based on the ten-year delay between the offenses and filing of the charges; (2) failed to object to the admission of certain photographs that were marked with the date of 9/26/97 even though the offenses occurred on 9/27/97; and (3) failed to depose the surviving victim, Frank Taylor. Carter alleged his appellate counsel rendered ineffective assistance on direct appeal when he did not raise trial counsel's alleged ineffective assistance as an issue for review.

[6] The post-conviction court held an evidentiary hearing on Carter's petition on November 7, 2012. At that hearing, Carter moved to withdraw his petition without prejudice. Carter asserted that he needed more time to obtain his own medical records and the any records regarding Foley's alleged prior incarceration. The State objected to Carter's motion, and the post-conviction court denied the motion. On October 1, 2013, nearly a year after the evidentiary hearing but prior to the post-conviction court's judgment on

Carter's motion, Carter again moved to withdraw his petition for post-conviction relief without prejudice for the same reasons, among others, that he had raised at the evidentiary hearing. The court again denied Carter's motion.

On October 28, 2014, the post-conviction court entered its findings of fact and conclusions of law denying Carter's petition for post-conviction relief. This appeal ensued.

# Discussion and Decision

## *Issue One: Denial of Motions to Withdraw*

Carter first asserts that the trial court erred when it denied his motions to withdraw his petition for post-conviction relief without prejudice. Indiana Post-Conviction Rule 1(4)(c) states:

> At any time prior to entry of judgment the court may grant leave to withdraw the petition. The petitioner shall be given leave to amend the petition as a matter of right no later than sixty [60] days prior to the date the petition has been set for trial. Any later amendment of the petition shall be by leave of the court.

(Brackets original.) We review the post-conviction court's judgment to deny a motion to withdraw a petition filed later than sixty days prior to the evidentiary hearing for an abuse of discretion. *Tapia v. State*, 753 N.E.2d 581, 584 (Ind. 2001). We will reverse the post-conviction court's judgment only where it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* at 585. If the post-conviction court could reasonably conclude that the

benefit of a delay to the petitioner would not outweigh the costs to the court in wasted time, we will affirm. *Id.* at 586.

[10] On appeal, Carter asserts that the trial court abused its discretion when it denied his motions because, had he been given more time to obtain them, his medical records would have shown that he could not have committed the offenses due to knee surgery he had had near the time of the offenses. Carter further asserts that, had he been given more time to obtain them, Foley's juvenile incarceration records would have shown that Foley was incarcerated at the time of the offenses and, therefore, could not have witnessed them.

[11] But Carter acknowledges on appeal that the hospital where he had his knee surgery informed him that it "no longer ha[d] 1997 records[;] they have been destroyed." Appellant's App. at 44; *see* Appellant's Br. at 4. And Carter likewise acknowledges that his request for Foley's incarceration records was denied by the Public Information Officer for the Logansport Juvenile Correctional Facility because those records "are exempt from disclosure" under Indiana law. Appellant's App. at 91; *see* Appellant's Br. at 4. As such, Carter fails to demonstrate how more time from the post-conviction court would have been meaningful to him in his attempt to access those documents.[1] Thus, we

---

[1] In his Reply Brief, Carter suggests for the first time that he could have obtained Foley's records if the post-conviction court had granted his request for a *subpoena duces tecum*. But Carter nowhere argues that the trial court erred when it denied that motion. Insofar as his assertions in his Reply Brief are an attempt to make that argument, we are obliged to note that arguments may not be raised for the first time in a reply brief. *E.g.*, *Morris v. BioSafe Eng'g, Inc.*, 9 N.E.3d 195, 201 n.4 (Ind. Ct. App. 2014), *trans. denied*. This rule applies to other assertions in Carter's Reply Brief as well.

cannot say that the trial court abused its discretion when it denied Carter's motions to withdraw his petition for post-conviction relief. *See Tapia*, 753 N.E.2d at 586.

## *Issue Two:  Full and Fair Evidentiary Hearing*

[12]  Carter next asserts that the post-conviction court denied him a full and fair evidentiary hearing on his petition for post-conviction relief.  As Carter states, "he was denied a full and fair hearing at the post-conviction court because of Carter's inability to obtain another continuance or withdraw his petition so that he could obtain the proper documents to support Carter's claims . . . ." Appellant's Br. at 12.  That is, Carter's argument here is premised on his earlier argument that he was entitled to more time to obtain his medical records and Foley's juvenile incarceration records.[2]  As we conclude that the post-conviction court did not abuse its discretion when it denied Carter's request for that additional time, Carter's argument under this issue must also fail.  We affirm the post-conviction court's judgment.

[13]  Affirmed.

Baker, J., and Friedlander, J., concur.

---

[2]  Carter's argument on this issue in his Reply Brief is a wholly new argument that he did not raise in his initial brief.  Accordingly, we do not consider it. *Id.*